## THE KING vs. J. R. ROBERTSON.

IN THE MATTER OF ALLEGED CONTEMPT OF COURT BY THE

ATTORNEY-GENERAL.

BEFORE MCCULLY, J.

JULY TERM, 1889.

At Common Law the Attorney-General has the right, on his sole responsibility, to enter a *nolle prosequi* in a criminal prosecution: but the Common Law is not in force, as such, in this country.

The uniform practice in the Supreme and Circuit Courts of this Kingdom has been that the Attorney-General "asks leave of the Court" to enter a *nolle prosequi,* giving some satisfactory reason therefor.

The Attorney-General cannot continue a criminal case, except by leave of the Court, for cause shown: and the same rule must be applied as to entry of a *nolle prosequi.*

The Court will not compel the Attorney-General to prosecute, nor punish him for contempt if he declines: but it may refuse to consent to the entry of a *nolle prosequi,* and consent is refused in the present case.

### DECISION OF MCCULLY, J.

When this case was reached on the calling of the calendar the first day of the term, His Excellency Attorney-General Ashford said that he asked leave to enter a *nolle prosequi,* or that he desired to or moved to enter a *nolle prosequi,* or to that effect, the precise words used not being then noted, giving as a reason therefor the absence from the Kingdom of one Louis Magoney, whom he styled the prosecuting witness.

The Court responded that it would take the matter of granting leave to enter the *nolle prosequi* under advisement, and upon the following day announced that it did not deem the absence of this witness a sufficient reason for not bringing the case to trial if he were not the sole witness on which the case depended, which was not alleged, and therefore declined leave of Court for the entry of a *nolle prosequi.*

Thereafter, Alfred S. Hartwell, Esquire, requested the Court that he be allowed to appear in this matter. On the 6th of July Mr. Hartwell presented argument to the Court as "counsel for the Attorney-General, on the right of the Attorney-General to decline to prosecute."

For the complete understanding of the position taken by the learned counsel for the Attorney-General, his brief is here given in full:

### BRIEF OF A. S. HARTWELL.

The Attorney-General having *nol. pros'd.* the case, and the defendant by his counsel being present in Court and consenting thereto, the Court said that its consent was required, which it refused to give. Later on the Court declared that it would hear argument on the question of the right of *nolle prosequi*, and it is on that question that counsel for the Attorney-General now appears.

1. The Attorney-General and his counsel claim that it is the unqualified, exclusive and absolute right of the Attorney-General, upon his official responsibility, for the discharge of which he is not responsible to the Justices of this Court, to decide whether he will or will not prosecute indictments as well after they are found as before. The expression *nolle prosequi*, or more fully, *dicit nolle prosequi*, means that the Attorney-General says that he will not prosecute. In such case, who can make him prosecute? It is an absurdity in terms to say that he can be forced into the prosecution. No writ, process, order or rule of Court known to the law can be suggested, having such effect. It would assign to the Court the duty of a prosecutor, contrary to all imaginable theory.

The Court is not the guardian, protector or enforcer of the rights of the Crown or Government, or, to use the American and popular expression, of the People, but only of the parties brought before the Court in any particular case. If the Attorney-General discontinues a prosecution after a jury is impanelled and sworn, or, later still, after the case is submitted to the jury, or even after a verdict of guilty is rendered, the Court has only to say

whether such discontinuance, if opposed by the defendant, shall operate as an acquittal.

The statute provides that, before the indictment is found, the defendant may at any time be released from custody and from the charge pending against him, upon the Attorney-General filing a certificate with any Judge of the Supreme Court that he declines to present an indictment, the Judge being required thereupon to order the discharge. In such cases no reasons are required to be named by the Attorney-General for his course, and the statute leaves no discretion to the Judge but to order the defendant's release.

The only reference which the statute makes to releasing a defendant without trial, and after indictment found, is that a failure to prosecute at the term next ensuing (unless the cause shall have been postponed, or the venue be changed, by the Court), "shall operate as an acquittal of the accused, and the Court shall order his discharge from custody."

No order of Court can prevent such "failure to prosecute," whether it result from want of testimony, lack of preparation, or from ill-considered or well-considered, from good or bad, reasons on the part of the Attorney-General. He is not required to give any reasons for not prosecuting.

2. The duties of the Attorney-General, as defined by the Act of July 27, 1866, require him to appear personally or by deputy in Courts of Record in all Crown or Government cases, and to be vigilant and active in detecting offenders against the laws, and to prosecute the same with diligence. The Constitution makes him a member of the Cabinet, and, as such, one of the King's special advisers in the executive affairs of the Kingdom, removable only upon a vote of want of confidence or upon conviction of felony, and subject to impeachment.

The Constitution, Article 20, declares that "the supreme power of the Kingdom, in its exercise, is divided into the Executive, Legislative and Judicial. These shall always be preserved distinct."

If the judicial power can be extended to requiring the

Attorney-General, the head of one of the executive departments, and a special adviser of the Sovereign, to prosecute any specified case on penalty of fine or imprisonment, this would not permit the exercise of executive and judicial powers to be preserved distinct: it would annul the discretionary and voluntary exercise of executive power, as far as the Attorney-General is concerned. That officer is liable to lose his office if convicted of felony, impeached, or if the Legislature shall vote want of confidence in him; but in no other way can his official conduct or misconduct be controlled, except in case of his committing a criminal offense.

Whether, as used to be claimed here, Crown cases always have precedence to civil cases on the calendar of Court, or the Court may direct the order of trials to suit its own views, is irrelevant to the question under consideration. Whether the Attorney-General shall or shall not be vigilant in detecting and prosecuting offenders, the public will note, and by their votes at the polls and by their elected representatives in the Legislature will decide. But such decision is not entrusted to the judicial power.

. 3. The exclusive power to *nol. pros.* a case, at any time before a jury is sworn to try it, rests with the Attorney-General, even if the defendant objects, according to the law as laid down by English and American text writers and Courts, certainly in England since the days of Charles II.

"The King's Attorney, *qui sequitur pro domino rege,* may enter an *ulterius non vult prosequi,* which hath the effort of non-suit." 1 Coke Litt. 139 b.

"For obvious reasons, the functions of the Court and prosecuting officer are entirely distinct. The Court cannot usurp the duties of his office and say what cases shall and what shall not be prosecuted. The law has lodged that duty with officers selected for that special purpose, and who are responsible for the manner in which they perform those duties." Smith, J., in *State vs. Tufts,* 56 N. H., 138.

"Certainly the Court is not legally competent to give any

46

advice on this subject. The power of entering a *nolle prosequi* is to be exercised at the discretion of the attorney who prosecutes for the Government, and for its exercise he alone is responsible." *Comm. vs. Wheeler,* 2 Mass., 173.

· "The question raised by the exceptions thus resolves itself into the single inquiry whether, after an indictment has been found and returned into Court, and before any proceedings have been had thereon, the attorney for the Government has authority to enter a *nolle prosequi* on the indictment. We can hardly deem this an open question. The exercise of such an authority is not only in conformity to the ancient and uniform practice in the Courts of this Commonwealth, but it has been distinctly recognized by this Court as being reasonable and proper, and not inconsistent with the legal rights of the defendant." *Commonwealth vs. Tuck,* 20 Pick., 336, ·365; *Commonwealth vs. Wheeler,* 2 Mass., 174.

"In the latter case it is expressly stated by the Court that it is perfectly clear that a *nolle prosequi* may be entered at the pleasure of the prosecuting officer before a jury is impanelled. The reasons for the practice are there stated, and they are numerous and decisive. Nor can we see that there are any valid objections to it. Such a mode of disposing of an indictment cannot in any way impair or affect the rights of the accused party in any future prosecution for the same offense. That it will not be resorted to capriciously or oppressively, so as to work any undue hardships on defendants, is sufficiently guarded against by intrusting the exercise of the power to the sound discretion of an officer of the Government, whose function it is to watch over and direct the course of criminal prosecutions, and who can have no motive to use the authority vested in him in manner inconsistent with a due regard to the rights and interests of all parties." *Commonwealth vs. Smith,* 98 Mass., 10.

Cockburn, C.J.: "It is the undoubted right and power of the Attorney-General, as the representative of the Crown in matters of criminal law, to enter a *nolle prosequi*, and thereby at once to stay proceedings in a criminal suit of information, and no in-

stance has been cited, nor can any be found, in which the Court, after a *nolle prosequi* had been entered by the Attorney-General, has taken upon itself to direct such proceedings to be prosecuted. Even if this Court should do so, there is nothing to prevent the Attorney-General from entering a *nolle prosequi toties quoties.*"

"It is not for this Court to create a precedent of this sort where none before existed—a precedent contrary to the understanding of the profession, and one that would be fraught with public mischief. Under ordinary circumstances, no doubt the Attorney-General would act wisely in calling the prosecutors before him before he proceeded to enter a *nolle prosequi*, but there may be particular cases in which from the knowledge of the facts, or the particular nature of the charge, the Attorney-General might think it necessary to enter a *nolle prosequi* without adopting that course. It cannot be contended for one moment that there can have been any abuse exercised by one whose functions are of such highly responsible character; but if there had been—and I only put it hypothetically—the remedy is not by an application to this Court to interfere by the exercise of its undoubted power and prerogative, but to hold him responsible before the High Court of Parliament. I am not at all disposed to establish a precedent in such a case, and I think, therefore, there should be no rule."

Crompton, J.: "I am of the same opinion. I think we have no power to do what is now asked of us, and I think we ought not to interfere with the undoubted power of the Crown vested in the Attorney-General. There is nothing in the present case to take it out of the general rule. I think the Attorney-General can interfere in any public prosecution whenever he pleases, and all the cases referred to are clearly distinguishable from such one as this."

Blackburn, J.: "I am of the same opinion. This particular branch of the prerogative is entrusted to the Attorney-General, who, on his own responsibility, determines whether the prosecution shall go on or not."

Mellor, J., concurred. *Regina vs. Allen,* 9 Cox. C. C.; 122.

"The following is related of Sir John Holt, Chief Justice of the K. B., in the reigns of William and Anne. There were some persons in London who pretended to possess the power of foretelling future events, and who were called the French prophets. Holt having upon occasion committed one of these to prison, a disciple of his came to the Chief Justice's house and desired to see him. On being admitted, he said: 'I come from the Lord, who bade me desire thee to grant a *nolle prosequi* for John Atkins, his servant, whom thou hast thrown into prison.' ' Thou art a false prophet and lying knave,' returned the Chief Justice: 'If the Lord had sent thee it would have been to the Attorney-General, for the Lord knoweth that it is not in my power to grant a *nolle prosequi*.' " In *People vs. McLeod*, 1 Hill, 405, Note f.

"And, without prejudice to any such fresh prosecution, the Attorney for the State may *nol. pros.*—that is, discontinue— an indictment at any time after it is found, previous to the moment when, the defendant having pleaded, that is, made answer to it, a traverse jury is impanelled and sworn to try the cause." 1 Bishop Cr. Law, Section 7, 886.

"A *nolle prosequi* is the voluntary withdrawal by the prosecuting authority of present proceedings on a particular bill, and at common law is a prerogative incident to the Sovereign. It may at common law be entered at any time before judgment, and the practice is usual during trial or after conviction to enter it upon objectionable counts, or parts of counts, so as to confine the verdict to those which are good. Courts have, it is true, frequently held that the prerogative is one subject to their control, while the case is on trial, and that the Attorney-General has no right, after the jury is impanelled and witnesses called, to withdraw the case without their sanction." Wharton Cr. Pr. & Pl.

"It is scarcely necessary for the Court to disclaim all pretensions to such a jurisdiction. An extravagance, so absurd and excessive, could not have been entertained for a moment. The province of the Court is solely to decide on the rights of

individuals, not to inquire how the executive or executive officers perform duties in which they have a discretion. Investigations in their nature political, or which are by the Constitution and Laws submitted to the Executive, can never be made in this Court." *Marbury vs. Madison,* 1 Cranch, 137.

"Also the King's Attorney-General may enter a *nolle prosequi,* which has the effect of a nonsuit, to any information or action brought by the King only." 3 Bac. Abr. tit. Prerogative, page 102.

"After indictment found, and until trial commences, the District Attorney's authority may be said to be absolute. He can then abandon the prosecution at his pleasure. He can enter a *nolle prosequi* even without the consent of the Court." Per Field, J., in *U. S. vs. Schuman;* U. S. Cir. Court for Cal.; 7 Sawyer, 439.

### BY THE COURT.

The proposition of the counsel for the Attorney-General that at the common law the Attorney-General of England and of States which have adopted this part of the common law has the right upon his sole responsibility to enter a *nolle prosequi,* is not doubtful, and has not been questioned by this Court.

But the common law is not in force in this Kingdom. This is not an English colony which has brought out the law of England to be in force here, except as modified by express statute. The law of this country is found in our enacted statutes, and in the precedents established by decisions of our Supreme Court, in which it is allowed (Section 823 of the Civil Code) "to cite and adopt the reasons and principles of the admiralty, maritime and common law of other countries, and also of the Roman or civil law, so far as the same may be founded in justice and not in conflict with the laws and customs of this Kingdom." This doctrine has been frequently expressed by the Supreme Court. This part of the common law has not been enacted nor adopted here; nor could a duty and power of the Attorney-General be imposed or assumed; or withdrawn, upon consideration of what was the law of other countries.

The uniform practice of the Supreme Court and of the Circuit Courts has been that the Attorney-General, by himself or his deputy, when desiring to *nol. pros.* a case after indictment found, asks leave of the Court that it may be so entered, giving the Court or the presiding Justice some satisfactory reason therefor. These reasons are not always given publicly in the Court. They are frequently presented to the Judge in his office, and upon the motion being made in Court the Court in response sometimes states the reason given, and sometimes merely says that for satisfactory reason given the *nol. pros.* may be entered. I state this to be the custom of the Court upon my own knowledge as a Justice for twelve years, and as a deputy of the Attorney-General for four years, and upon inquiry of my brethren on the Bench, two of whom have held the office of Attorney-General, and who say that the practice has been uniformly as I have stated it.

Our Statute of Criminal Procedure (Act of 1876, C. L., page 338) provides for the discharge without prosecution of persons imprisoned under committal for trial for any offense, by the Attorney-General's granting a certificate to the Justices or Justice of the Supreme Court that *he declines* to present an indictment in the specified case, whereupon the Justice or Justices *shall* issue to the Marshal a warrant of discharge of such person from custody.

This statute was enacted in 1876, and as it provides only this method of discharge upon the sole responsibility and authority of the Attorney-General, I think it may be inferred that the existing practice was not intended by the Legislature to be varied in other respects.

The Court has control over a continuance of a case by Section 34 of the Criminal Procedure Act of 1876: "If the Court before which any person is indicted shall, upon the application of such person or otherwise, be of opinion that he ought to be allowed further time to plead," etc., the Court may grant further time or continue to another term, certainly without the control of the Attorney-General.

Section 13 of the same Act gives the power to the Court to change the venue of any criminal proceedings to any other Court of Record, for such reasons as the justice of the case may require, and subject to such conditions as the Court may in its discretion impose. In regard to all which the Attorney-General would be heard, but the decision and control would be of the Court.

The Act of 1866, now in force, defining the duties of the Attorney-General (C. L., p. 315) requires him to be vigilant and active in detecting offenders against the laws, and to prosecute them with diligence. The law (Sections 1 and 2 of the Act of 1876) requires the Attorney-General to present the indictment before the next ensuing term after the commitment to the Judge, who shall, after examination, certify upon each bill of indictment whether he finds the same a true bill or not.

What is the examination which the Judge is required to make?

There is no grand jury here, and to some extent the Judge performs its functions. The evidence taken before the committing magistrate is submitted to him, and he hears statements from and makes inquiry of the Attorney-General to the extent of ascertaining if it is a case which ought to be tried. In the supposable case of its appearing that the evidence was frivolous, and entirely unsupporting the charge, he would not find it a true bill, and the accused could not be put on trial. Or, in the supposable case that the evidence being examined showed a case, say of embezzlement, when the indictment charged forgery, he would not approve the indictment for forgery.

Again, if the form of the indictment was obviously defective, though not charging a different offense from that presented in the evidence, he would probably not find it a true bill. The Court's approval of the indictment as to form in no wise precludes or prejudices any showing by defendant's counsel that the indictment is faulty, and motions to quash or otherwise.

The Court's approval of the bill as being founded on evidence in no wise identifies the Court with the prosecution. I say this

without hesitation on the part of every Judge living and dead who has occupied this Bench.

Examining the statutes previous to those now in existence above referred to, the first is the statute of 1846, which organizes the executive departments, and by which the office of Attorney-General was first constituted, and his duties prescribed (pages 264 *et seq*). Section 8 prescribes that every prisoner committed for trial shall be arraigned upon an indictment allowed by the Judge. * * * And (Sec. 9) after plea the said Attorney-General shall, unless a postponement be granted for cause by the Court, proceed to make good by proof all or any of the counts in said indictment. So it appears that the Attorney-General had not the sole and exclusive control, now claimed, of the prosecutions, for he could not continue a case unless by leave of the Court granted for cause shown. An absolute power to continue a case, without cause shown and without leave, is equivalent to a power to continue and not prosecute at all. This he had not, but was commanded by the law to prosecute.

In a single instance under this statute was the power given to the Attorney-General to enter a *nolle prosequi*. Section 3: "When a writ of *habeas corpus* shall have been issued by any court of justice to inquire by examination of witnesses into the cause of the legality of the imprisonment of any alleged delinquent or criminal awaiting his trial, the Attorney-General * * * shall attend to see that the alleged delinquent or criminal be not enlarged without just cause. He shall represent the prosecution in all such cases, and he may, when the public interests require it, enter *nolle prosequi* against a suspected person." This statute is nearly equivalent to the statute of 1876 above cited. The rule of *expressio unius est exclusio alterius* well applies here. The authority is given expressly in a defined instance, viz.; of preliminary inquiry for commitment, and is not given otherwise. The instance allowed is of a case not yet under indictment found. The general mandate of the law is that the Attorney-General *shall prosecute*.

By a joint resolution of the Legislature in 1846, subsequent

to the passage of the organic Acts in the same year, authority is given the Cabinet to appoint other public prosecutors, and to the Judges of the Superior Court to appoint district attorneys, pending the appointment of a new Attorney-General; the then Attorney-General, Mr. Ricord, it appears, was about to leave the Kingdom, and his office was not filled.

In 1859 (Civil Code, Sections 1080-1095) the law provided only for district attorneys, an Attorney-General not being constituted by the Constitution of 1852. These district attorneys were appointed by the Justices of the Supreme Court for each judicial circuit of the Kingdom. They gave bond to the Chief Justice; they were commissioned for the term of two years, unless sooner removed by the Justices of the Supreme Court. They were required to prosecute offenses with diligence. No mention is made of a right to *nolle prosequi*.

By statute in 1862 the system of having an Attorney-General was restored. He was appointed by the King for a term of two years, unless sooner removed by the King. His duties were prescribed to be those which had been performed by the district attorneys in Sections 1080-1095. No power is granted to *nolle prosequi*.

By the Constitution of 1864 an Attorney-General was established, and he was made a member of the King's Cabinet (Article 42), and in 1866 an Act was passed defining his duties. It is almost throughout in the same words as the Act of 1862. His duties are again referred to Sections 1080-1095. The Act would seem to have been passed solely to state his position as "being appointed by virtue of an article of the Constitution;" but, although thus placed for the first time under the Constitution, and made a member of His Majesty's Cabinet, his duties in relation to prosecutions, and his status, rights, privileges and powers in the Courts, are unchanged from those of the officer who was created by statute only.

From this review of all the statutes touching the rights and duties of the Attorney-General, I am of opinion that the procedure which I have stated to be the custom of the Court and

of the Attorney-General is in accordance with our law, and accords with the interpretation hitherto given by the Court and by the Attorneys-General.

It is a well-established precedent of practice based on the law. I cannot set it aside. If it does not now and further commend itself, the Legislature can enact a statute authorizing another procedure.

The counsel for the Attorney-General says, in argument: "If the judicial power can be extended to requiring the Attorney-General * * * to prosecute any specified case on penalty of fine or imprisonment, this would not permit the exercise of executive and judicial powers to be preserved distinct; it would annul the discretionary and voluntary exercise of executive power, so far as the Attorney-General is concerned." This, in my view, is a misapprehension of the matter in discussion.

The Court has not ordered the prosecution of this case. It cannot and it will not do so. It has simply refused to approve and allow a motion for *nolle prosequi* upon the reason stated.

It has not and will not "fine or imprison an Attorney-General" for contempt by reason of not prosecuting a case.

It will be observed that I do not agree in terms with the statement in the opening of the argument of counsel; "The Attorney-General having *nol. pros'd.* the case * * * the Court said its consent was required, which it refused to give." The Court said it would take time to consider (the reason offered), and it could not treat the motion as made otherwise than in accordance with the established precedent of practice and procedure. This difference in statement is, however, only the difference which constitutes this controversy on the part of the Attorney-General and his counsel. It is not a question of veracity as to facts.

Having thus given the opinion of the Court upon the abstract question argued by counsel, and holding against his contention, and he having made no argument addressed to the discretion of the Court upon its previous ruling not to grant leave to *nol. pros.* the case of Robertson, that ruling might stand. But as this

particular case has been virtually brought up by allowing the further argument to be made, I have reconsidered that ruling.

I have examined the evidence given in the previous trial, excepting that of Magoney, the absent witness. There are six witnesses besides him. On their testimony, if given in a magistrate's court, I should find a true bill of indictment. I express no opinion upon the proper or probable result of a trial. It is only an opinion that it is a case to be put on trial.

But this the Court cannot order. If, when it is called for trial, the Attorney-General, being present in person or by deputy, does not prosecute, it will stand not prosecuted in fact, but without the entry of *nolle prosequi*. The Attorney-General will take his own course.

If it shall proceed to trial I will ask one of my brethren on the Bench to hold the trial, not because I deem myself to have, or to have indicated, any bias in the defendant's case, by withholding my concurrence to dismissing him without trial, but because by the collision which has arisen from this case between the Court and the Attorney-General, a sensitive condition of public feeling has been induced, under which it might be imputed that my rulings were over-strict against the defendant, urging his conviction, or were too favorable from fear of the other imputation.

July 11, 1889.

---

NOTE.—Mr. Hartwell and Mr. Neumann, of counsel for the defendant, requesting, immediately on the rendering of this opinion, that this Justice should himself hold the trial, he assented to do so. Trial was had later in the Term, resulting in a verdict of Not Guilty.